UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KATHRYN O'BRIEN,

                              Plaintiff,

                                v.                            **MEMORANDUM AND ORDER**
                                                                       CV 04-3369 (VVP)
MARRIOT INTERNATIONAL, INC. and
RESIDENCE INN BY MARRIOT

                              Defendants.
-------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

      The parties are in dispute as to which state's comparative negligence law should be applied in this personal injury action. The plaintiff is a New York domiciliary, the defendant is a Delaware corporation with its principal place of business in Maryland, and the accident occurred in Massachusetts. (*See* Notice of Removal ¶ 3(a)-(c).) The plaintiff presses for the application of New York law while the defendant contends that Massachusetts law should apply. Neither party briefed the application of Delaware or Maryland law. For the reasons discussed below, the court concludes that New York law applies.

## DISCUSSION

      I.      **Applicable Statutes**

      Under New York's comparative negligence statute, C.P.L.R. 1411, the "culpable conduct attributable to [a] claimant [in a personal injury action] . . . including contributory negligence or assumption of risk," does not bar recovery. Rather, "the amount of damages otherwise recoverable [is] diminished in the proportion which the culpable conduct attributable to the claimant . . . bears to the culpable conduct which caused the damages." In essence, the "pure

comparative negligence" model that is C.P.L.R. 1411 allows a plaintiff in tort to recover regardless of the extent to which his or her culpable conduct contributed to the injury at issue. As one commentator put it, "in theory, a plaintiff who is 99% responsible for his own injuries may still recover 1% of his damages" in New York. N.Y. C.P.L.R. 1411 cmt. C1411:1. In contrast, Massachusetts' comparative negligence statute, Mass. Gen. Laws ch. 231 § 85, bars recovery "if the [amount of contributory] negligence [is] *greater* than the total amount of negligence attributable to the person or persons against whom recovery is sought." (emphasis added). Otherwise, "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made." *Id.*

## II.  Choice of Law Analysis

The present action had been removed to this court from the Kings County Supreme Court on the basis of diversity jurisdiction. (*See* Notice of Removal ¶ 4.) For cases arising in diversity, federal courts apply the choice of law rules of the forum state. *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003) (citing *Klaxon Co. v. Stentor Electric Manufacturing, Co.*, 313 U.S. 487, 496-97 (1941)). Therefore, the "task [at hand] is to determine what law New York courts would apply in this situation." *Id.* (citation and internal quotations omitted).

Under New York state choice of law principles, the court must first determine whether there is an actual conflict of laws. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citing *Allstate Ins. Co. v. Stolarz* (*In re Stolarz*), 81 N.Y.2d 19, 223 (1993)). Only if an actual conflict exists does the court continue with its choice of law analysis. *Id.* ("It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis.") (citations omitted). And, "[w]here the laws at issue are not in actual conflict, the court applies

2

New York law." *HSA Residential Mortgage Services of Texas v. Casuccio*, 350 F. Supp. 2d 352, 362 (E.D.N.Y. 2003) (citations omitted). The laws at issue here are clearly in conflict and neither party takes issue with this part of the analysis.

For tort cases, New York courts apply an "interest analysis" which focuses on applying the law of the state with the greatest interest in the litigation and is determined by evaluating the "facts or contacts which . . . relate to the purpose of the particular law in conflict." *Schultz v. Boy Scouts of Amer., Inc.*, 65 N.Y.2d 189, 197 (1985) (quoting *Miller v. Miller*, 22 N.Y.2d 12, 16 (1968)). This requires two separate inquiries: "(1) what are the significant contacts and in which jurisdiction are they located; and (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521 (1994) (citing *Schultz*, 65 N.Y.2d at 198). As to the second prong, where the law in conflict is classified as conduct-regulating and "the parties are domiciled in different states, the locus of the tort will almost always be determinative . . . ." *Krock v. Lindsay*, 97 F.3d 640, 646 (2d Cir. 1996) (citation omitted). For a law that is deemed loss-allocating, however, the choice of law inquiry is governed by the so-called *Neumeier* test, *see Gilbert*, 332 F.3d at 109 (citations omitted), such that "the site of the tort is less important, and the parties' domiciles are more important." *See GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, No. 04-6679-CV, 2006 WL 1195923, at *6 (2d Cir. May 5, 2006) (citation omitted).

The weight of authority in New York state courts as well as the courts in the Second Circuit holds comparative negligence laws to be loss-allocating. *See, e.g.*, *Burke v. Stone & Webster, Inc.*, No. 03-Civ-8694, 2006 WL 522604, at *5 (S.D.N.Y. Mar. 2, 2006) ("With respect

3

to loss-allocating rules, e.g. comparative negligence, it is appropriate to apply New York law.");
*Armstead v. Nat'l R.R. Passenger Corp.*, 954 F. Supp. 111 (S.D.N.Y. 1997) (Rakoff, J.) (concluding that comparative negligence law was loss-allocating); *Pascente v. Pascente*, No. 91-Civ-8104, 1993 WL 43502, at *1 (S.D.N.Y. Feb. 25, 1997) (Sotomayor, J.) ("Contributory negligence rules are considered to be loss-allocating.") (citing *Cain v. Greater N.Y. Council of the Boy Scouts of Amer.*, 519 N.Y.S.2d 43, 44 (App. Div. 1972)); *Murphy v. Acme Markets, Inc.*, 650 F. Supp. 51, 53 (E.D.N.Y. 1986) (McLaughlin, J.) ("Although the Court of Appeals has not provided a touchstone to distinguish 'appropriate standards of conduct' rules from those that pertain to 'loss allocation,' there is little doubt that it would place comparative negligence statutes under the latter heading; such statutes allocate losses 'that result from admittedly tortious conduct.' ") (citations omitted); *Moon v. Plymouth Rock Corp.*, 693 N.Y.S.2d 809, 811-12 (Sup. Ct. 1999) ("[T]here is no question that both [C.P.L.R. 1411 and its Connecticut counterpart] can be classified as loss-allocating."). Moreover, it is amply clear from a plain reading of the comparative negligence statutes that the legislature was concerned not with influencing the conduct of its constituents but with ensuring that victims of tortious acts be compensated notwithstanding the existence of blameworthy conduct on the part of the claimant. C.P.L.R. 1411 speaks in terms of "recovery" and "damages" and does nothing to establish a standard for governing the conduct of individuals. This is even evidenced in the title of C.P.L.R. 1411 which states "*Damages recoverable* when contributory negligence or assumption of risk is established." (emphasis added). As such, there is little doubt that comparative negligence statutes fall within the class of rules "which prohibit, assign, or limit liability after the tort occurs," in other words,

4

loss-allocating rules. *See Simon v. Phillip Morris Inc.*, 124 F. Supp. 2d 46, 57 (E.D.N.Y. 2000) (Weinstein, J.) (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993) (listing examples of loss-allocating rules, such as guest statutes, vicarious liability laws, laws limiting recovery for wrongful death actions)).

Taking the opposite view, the defendant cites *Sabbatino v. Old Navy, Inc.*, No. 648/00, 2003 WL 21448822, at *1 (Civ Ct. May 9, 2003), for the proposition that comparative negligence statutes are conduct-regulating rules. Although the court in *Sabbatino* so held, the analysis supporting its conclusion is not persuasive. That court acknowledged at the outset that New York choice-of-law analysis requires a determination whether a given statute or rule is "loss allocating" or "conduct regulating." *Id.*, 2003 WL 21448822, at *2. The court then veered off, however, into an examination of the domiciles of the parties, and concluded that "Since there is no common domicile, 'loss allocation' rules do not come into play. The situs of the tort becomes the dominant factor in deciding what law to apply." *Id.*, 2003 WL 21448822, at *2. The court cited no authority for that conclusion, and indeed it is at odds with the analysis employed by the New York Court of Appeals in *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d at 66.

In *Cooney*, the court confronted a situation, like the one here, where there was no common domicile. Yet the *Cooney* court examined the conflicting laws at issue and concluded they were loss-allocating before proceeding to the rest of the analysis, including an examination of the domiciles of the parties. *See id.* at 74. As the Court of Appeals there put it,

> If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. But if competing

5

"postevent remedial [i.e., loss-allocating] rules" are at stake other factors are taken into consideration, *chiefly the parties' domiciles*.

*Id.* at 72 (emphasis added) (citing *Schultz v. Boy Scouts*, 65 N.Y.2d 189, 197-99 (1985); *Babcock v. Jackson*, 12 N.Y.2d 473, 483 (1963)).

The *Sabbatino* court's analysis thus was precisely backward. It first examined whether the parties were domiciled in the same state, and determined that, because they were not, loss-allocating analysis did not have to be considered. The proper analysis, however, is first to determine whether a rule is loss-allocating, and if so to then examine domicile. Indeed, if the rule is not loss-allocating, but conduct-regulating, domicile becomes irrelevant, because the law of the place of the tort controls. *Cooney*, 81 N.Y.2d at 74 ("Had conduct regulating been at issue here, our analysis would be greatly simplified, for the traditional rule of lex loci delicti almost invariably obtains."). The infirmity of the *Sabbatino* court's analysis requires rejection of its holding.[1]

Where loss-allocating rules are the subject of choice-of-law questions, New York courts apply the three-step test established in *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972).[2] The steps of

---

[1] The court's confusion in *Sabbatino* is exemplified by the contradictory statements it made concerning the application of loss-allocation rules. As noted above, the court at one point stated that loss allocation rules come into play only when the parties share a common domicile. 2003 WL 21448822, at *2 ("Since there is no common domicile, 'loss allocation' rules do not come into play."). Later, however, the court reversed course and stated that loss allocation rules come into play only when the parties do not share a common domicile. *Id.* at *3 ("The fact that both parties are domiciliaries of New York obviates the need to differentiate between whether the statute is conduct regulation or loss allocation. *It is only when they are domiciliaries of different states does this become an issue*.") (emphasis added). Obviously, being mutually exclusive, both statements of the law cannot be true; in fact, neither is.

[2] Although initially devised to govern choice of law for cases involving guest statutes, the New York Court of Appeals has since signaled its approval of applying the *Neumeier* test to cases involving other loss-allocating rules. *See Cooney*, 81 N.Y.2d at 73 ("Although drafted in terms of guest statutes-drivers and passengers-these [Neumeier] rules could, in appropriate cases, apply as well to other loss

6

the *Neumeier* test were set forth in and applied by the *Armstead* court to a situation similar to the one at hand:

> First, the court must determine if the parties are domiciliaries of the same state, and apply the law of that state if they are. If, as here, they are not, the court must next determine whether the alleged tort occurred in the domicile of one of the parties, in which case the law of that state would apply. Finally, if, as here, the tort did not occur in the domicile of either party, the "lex loci delicti"– law of the situs of the tort – "will normally apply, *unless displacing it [with another relevant jurisdiction's law] 'will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.'*"

954 F. Supp. at 112-13 (citation omitted) (emphasis added). As the parties here are not domiciliaries of the same state and as neither is a domiciliary of the state where the tort occurred, the court must consider the conflicting comparative negligence laws here under the third step of the *Neumeier* analysis.

Although the "presumption" at the third *Neumeier* step is to apply "the law of the situs as a default," New York courts have generally recognized that "when considering conflicting loss-allocating rules . . . 'the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy.'" *Tkaczevski v. Ryder Truck Rental, Inc.*, 22 F. Supp. 2d 169, 173 (S.D.N.Y. 1998) (quoting *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 13 (2d Cir. 1996)) (additional citations omitted); *see also Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330, 337 (E.D.N.Y. 1999) (Weinstein, J.) ("[W]here the conflict is between loss-allocating rules, the locus jurisdiction has a lesser interest and the interest of the parties' domiciles assumes correspondingly greater importance.") (citations omitted). Following this logic, almost all of the courts in this

---

allocation conflicts.") (citation omitted).

7

circuit examining similar scenarios under the third *Neumeier* test, particularly in the comparative negligence context where the plaintiff is a New York domiciliary, have concluded that New York law should apply. To justify the application of New York law, these courts observe that departure from the law of the situs is justified because special policy concerns are implicated, which the third *Neuemeier* rule specifically recognizes as a valid basis for displacing the *lex loci delicti*. *See, e.g.*, *Tkaczevski*, 22 F. Supp. 2d at 173 ("To disregard the expectation of New York and Florida domiciliaries in favor of Pennsylvania law simply because the accident occurred in Pennsylvania is illogical. Therefore, the Court believes special circumstances exist warranting an exception from the presumption of lex loci delicti established in the third Neumeier rule.").[3] The reasons generally given in support of this policy-based departure are that (1) the state where the accident occurred "has no substantive interest in enforcing its rule when two non-domiciliaries are involved," *Armstead*, 954 F. Supp. at 113 (plaintiff was New York domiciliary, defendant was District of Columbia domiciliary, and accident occurred in Virginia, court applied New York's comparative negligence law), (2) "New York has an interest in protecting New York domiciliaries injured in foreign jurisdictions," *Murphy*, 650 F. Supp. at 54 (plaintiff was New York domiciliary, defendant was Pennsylvania corporation, accident occurred in New Jersey, court applied New York's comparative negligence law) (citation omitted), and (3) "New York has an obvious interest in enforcing its determination that its own domiciliary whose own negligence is only

---

[3]This "policy exception" should be distinguished from the more general policy exception in which "[a] court may refuse to apply a *foreign law* deemed applicable under New York's choice of law rules only where that law is 'truly obnoxious' to New York public policy." *Hamilton*, 47. F. Supp. 2d at 337 (citing *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1031 (2d Cir. 1996)) (additional citations omitted) (emphasis added). This exception is inapplicable in the present matter since the court ultimately concludes that New York law applies.

partially responsible for her injuries should not go uncompensated," *Armstead*, 954 F. Supp. at 113 (footnote omitted).  *Accord Burke*, 2006 WL 522604, at *5 (plaintiff was New York domiciliary, defendants were Louisiana and Pennsylvania corporations, accident occurred in New Jersey, court applied New York's comparative negligence law).  *Cf. O'Connor v. United States Fencing Ass'n*, 260 F. Supp. 2d 545, 557-58 (E.D.N.Y. 2003) (Korman, J.) (plaintiff a New York domiciliary, defendant a Colorado corporation, accident occurred in California, court, under third *Neumeier* rule, applied New York's express waiver of liability law).  Therefore, under the third *Neumeier* rule and consistent with the current legal landscape, New York's comparative negligence statute should be applied.

This court recognizes that, in applying the third *Neumeier* rule in the comparative negligence context, New York courts have almost uniformly found the policy concerns of other states (typically New York) to outweigh the interest of the *lex loci delicti*, and thus have largely eliminated the presumption established by the third *Neumeier* rule.  Nevertheless, in light of what is clearly the emerging rule in the courts in this circuit, the court concludes that New York's comparative negligence rule should apply to the instant action.

## CONCLUSION

For the foregoing reasons, the court will apply New York's comparative negligence law in determining the allocation of liability for damages between the parties.

SO ORDERED:
*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York

9

June 29, 2006